Manuel GARCIA MARRERO et al., Plaintiffs, Appellants,

v.

The Hon. Roberto SANCHEZ VILELLA, etc., et al., Defendants, Appellees.

No. 6987.

United States Court of Appeals First Circuit.

March 7, 1968.

Santos P. Amadeo, San Juan, with whom Julio Rodriguez, Jr., San Juan, and Jose Enrique Amadeo, Santurce, P. R., were on brief, for appellants.

Rafael A. Rivera-Cruz, Asst. Atty. Gen., with whom Jose F. Rodriguez-Rivera, Acting Sol. Gen., was on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

By virtue of its constitution and federal statutes in the nature of a compact, Puerto Rico has the status of an "Estado Libre Asociado," or Commonwealth. Act of July 3, 1950, 48 U.S.C. §§ 731b–e; Jt.Res. of July 3, 1952, 66 Stat. 327; P.R.Const. art. I, § 1. In 1966, because of active political discussion concerning modification of this status, the Legislature decided to conduct a poll or plebiscite of the voters of Puerto Rico to ascertain whether they would like a change in one direction or another, to wit, statehood or independence, or whether they preferred to maintain the Commonwealth arrangement. Act No. 1, Dec. 23, 1966, amended by Act No. 2, Feb. 24, 1967. In accordance with this statute the ballots were to provide for a selection of one of these three choices, and a vote for any of the alternatives was to authorize certain implementing steps.

Certain persons—how many is not known—felt that there should be a fourth choice; not, however, some fourth specific arrangement, but simply an opportunity, to quote the complaint, "to vote against the holding of the plebiscite," or "to exercise the right of dissent by voting against said plebiscite." For convenience we will refer to this, as was done in oral argument, as a vote "no," or a vote against the plebiscite. Plaintiffs, claiming to represent these persons, brought this class action in the district court. Jurisdiction was based on 28 U.S.C. §§ 1331, 1343. On motion, the complaint was dismissed, and plaintiffs appeal.[1] As entitling them to relief, they rely on article I, section 9(3) of the Constitution, dealing with bills of attainder, the first, fifth, ninth, tenth, and fourteenth amendments, and the Treaty of Paris, 30 Stat. 1754 (1899).

We note at the outset that in their prayers for relief plaintiffs did not request a judicial declaration that it was appropriate for voters who wished to do so to write in "no," or an order directing respondent election officials to enlarge the ballot. The sole relief sought was that the plebiscite be enjoined altogether. While we do not base our decision on this ground, we cannot but observe that the plaintiffs, although professing various democratic principles, and freedom of speech in particular, wanted, because the ballot did not contain a place for them to vote as they wished, to prevent everyone else from voting at all.

---

[1]. By its dismissal the court refused plaintiffs' request for the appointment of a three-judge district court. Appeal to this court was appropriate. Benoit v. Gardner, 1 Cir., 1965, 345 F.2d 792, 351 F.2d 846.

In spite of the total obliteration requested by the plaintiffs, we will assume in their favor that they would have been content with a ballot permitting others to express their own views so long as it had a space provided for themselves to vote in the negative. The immediate question, however, is what would have been meant by such a vote. To us a vote "against said plebiscite," particularly when coupled with the alternative "vote against the holding of the plebiscite," meant precisely that there should be no plebiscite. On that basis, we see no possible merit in plaintiffs' cause. The sole purpose of the plebiscite was to inform the Legislature, by a direct poll, of the will of the voters. If a vote "no" was to be interpreted as meaning that there was to be no plebiscite, then the substance of plaintiffs' position must be that there must be a plebiscite to determine whether there should be a plebiscite. That plaintiffs had a constitutional right, or other right, to require the Legislature to submit to the voters the question whether it should hold a plebiscite passes our understanding.

Alternatively, during oral argument plaintiffs' counsel contended that to "some" persons a negative vote would mean not "no plebiscite" but "preserve the status quo," which, in the opinion of such persons, a vote for Commonwealth status did not. We cannot deduce this from the complaint. But if we could, this contention, rather than advancing his case, does the reverse. It leads directly to counsel's ultimate concession that a "no" vote "would mean different things to different people." The question whether the Legislature, seeking to learn public sentiment, should have been required to afford an opportunity to express a vote the meaning of which would have been ambiguous answers itself.

In the light of this we need not consider certain procedural weaknesses, such as plaintiffs' delay of six months in asserting their alleged rights, until almost the eve of the plebiscite, and their failure to appeal the dismissal of the action in time to make an injunction against the plebiscite effective, the ostensible primary purpose of the suit.[2]

Because of the fundamental defects already explained, plaintiffs are not entitled to have the court reach the merits, if any, of their constitutional and other claims in the broader outlines that they wish us to consider.

Affirmed.

---

2. In oral argument counsel asserted that he did not know he had time for such an appeal. Concededly, however, he was informed of this court's willingness to make special arrangements in another similar case, dismissed shortly before. Concededly, also, he made no attempt to inquire whether we had changed our minds.